UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  AUG 25 2015  ★

LONG ISLAND OFFICE

N° 14-CV-4961 (JFB)

KAILASH GOBINDRAM,

Appellant,

VERSUS

BANK OF INDIA, NEW YORK BRANCH, AND BANK OF BARODA, NEW YORK BRANCH,

Appellees.

**MEMORANDUM AND ORDER**
August 25, 2015

JOSEPH F. BIANCO, District Judge:

Kailash Gobindram ("Gobindram," "appellant," or "debtor") appeals from an order entered by the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") in an underlying bankruptcy proceeding. After trial and in an opinion dated June 20, 2014 (hereinafter the "June 20 Order" or "Bankr. Ct. Op."), the Honorable Robert E. Grossman denied debtor's discharge, pursuant to 11 U.S.C. § 727(a)(4)(A), on the grounds that debtor demonstrated reckless disregard for the truth in submitting his Chapter 7 petition containing omissions of material information regarding pre-petition transfers to creditors and insiders, constituting fraudulent intent under the statute. *See Bank of India, New York Branch v. Gobindram (In re Gobindram)*, No. 11-75802-REG, 2014 WL 2809078 (Bankr. E.D.N.Y. June 20, 2014).

On appeal, Gobindram argues that the June 20 Order should be reversed and that he should be granted a discharge because: (1) the Bankruptcy Court erroneously concluded that Gobindram made the relevant statements in his petition—which Gobindram admits were inaccurate—with fraudulent intent and that those statements were material; and (2) the Bankruptcy Court failed to find that Gobindram reasonably relied on the advice of counsel in making those statements. Appellant argues that the misstatements in his August 15, 2011 petition were caused by "an isolated incident of carelessness" in reviewing the petition after it was prepared by his previous counsel, and that the evidence and testimony adduced at trial were insufficient to demonstrate his fraudulent intent in failing to disclose his 2011 tax refunds of more than $120,000 and his transfers of those funds to his wife and for other personal uses. Appellees Bank of India, New York Branch ("BOI"), and Bank of Baroda, New York Branch ("BOB") oppose and argue, *inter alia*, that the Bankruptcy

Court correctly found that (1) Gobindram knowingly and fraudulently submitted a false oath when signing his bankruptcy petition that he reviewed all of the information therein for accuracy, when in fact he testified later that he had not read the sections which omitted the transfers; (2) this false oath constituted reckless indifference to the truth, which is is the equivalent of fraud; and (3) Gobindram's reliance on his counsel to accurately complete his bankruptcy schedules does not negate debtor's reckless disregard for the truth, or his duty to ensure that the statements he was making under oath were accurate and truthful.

For the reasons set forth below, the Court finds debtor's arguments on appeal to be unpersuasive and affirms the Bankruptcy Court's June 20 Order. Specifically, having carefully reviewed the record, the Court concludes that the Bankruptcy Court's determination that debtor knowingly and fraudulently submitted false information was not clearly erroneous.[1] The Court also concludes that the Bankruptcy Court's rejection of debtor's advice of counsel defense was not erroneous under a *de novo* standard of review. Therefore, the Bankruptcy Court did not err in entering judgment in favor of appellees on their second cause of action.

I. BACKGROUND

A. Facts[2]

Before the filing of his bankruptcy petition, Gobindram was the owner/operator of two electronics companies—"Kash 'N' Gold Ltd." and "Power Brand"—which in the year 2000 generated approximately $48 million in yearly sales. (Bankr. Ct. Op. at *2; T1-22-23.) Debtor was responsible for managing sales, purchases, operations, and all other aspects of the two companies, including negotiating licensing contracts with major companies such as Disney and Harley Davidson, and overseeing the relationship with overseas manufacturers importing the companies' products for sale. (Bankr. Ct. Op. at *2; T1-22-24.) Beginning in 1984, debtor's companies began to receive loans and other credit facilities from appellee BOI, and initiated similar arrangements with appellee BOB around 2000. (Bankr. Ct. Op. at *2; T1-24-25.) In 2009, after a decline in the companies' business, Kash 'N' Gold entered into an amended and restructured credit agreement with both appellees to improve the company's financial condition, under which Gobindram himself executed personal guaranties of all amounts due to the banks under the agreement. (Bankr. Ct. Op. at *2; T1-25; JE3, 4.) The company and Gobindram eventually defaulted on their obligations to appellees, and BOI and BOB filed suit in New York state court on April 22, 2011 for non-payment. (Bankr. Ct. Op. at *2;

---

[1] The Court would reach the same conclusion as to this finding even under a *de novo* standard of review, for the reasons discussed in the June 20 Order and herein.

[2] Gobindram does not claim that the Bankruptcy Court incorrectly summarized the facts in the June 20 Order; instead, he objects to the conclusions drawn from those facts and the application of the law. Therefore, the Court draws the facts from the June 20 Order, and from other facts that were admitted in evidence at the trial and are in the appellate record. "R___" refers to the numbered documents in the record filed with the Court on August 20, 2014, September 5, 2014, and September 8, 2014. (*See* ECF No. 1.) "T1___" refers to the transcript of the first day of the trial proceedings before the Bankruptcy Court on July 16, 2013. (*See* R25-R34.) "T2___" refers to the transcript of the second day of the trial proceedings before the Bankruptcy Court on December 3, 2013. (*See* R43.) "JE___" refers to the numbered joint exhibits used at trial before the Bankruptcy Court. (*See* R7-24.)

2

T1-26-28; JE5.) The total amounts due by under the credit agreements at that time were $10,382,845.34 to BOI and $3,553,180.12 to BOB. (JE5.)

At some point in March 2011, debtor retained Harold Berzow of Ruskin Moscou Faltischek ("RMF") as his bankruptcy counsel. (Bankr. Ct. Op. at *3; T2-5.) According to testimony elicited at trial as well as emails between Gobindram and Berzow,[3] Gobindram informed Berzow that there was a possibility that he would receive tax refunds in 2011 from the federal government and New York state; Berzow advised debtor that if he filed a bankruptcy petition, "there was a potential that [the proceeds from his tax refunds] could be recovered preferentially" by a bankruptcy trustee. (Bankr. Ct. Op. at *3; T2-6, 16.)

On May 27, 2011, appellant received his New York state income tax refund of $16,129. (Bankr. Ct. Op. at *3; T1-28.) On June 15, 2011, as part of an email exchange regarding Gobindram's potential petition, Berzow (still unaware that debtor had actually received any tax refunds) wrote to Gobindram that "you need to remember that if you file bankruptcy now you will lose all rights to the tax refund." (Bankr. Ct. Op. at *3; T2-16-17.) On June 16, 2011, Gobindram received his federal tax refund of $101,780.[4] Debtor deposited the refunds into the Citibank account he held jointly with his wife, Jacqueline Melson, and immediately began to write checks to disburse these newly received funds, including two checks for $20,000 and $7,000 to "One Armed Bandit LLC," an entity of which Melson was the listed operating manager.[5] (Bankr. Ct. Op. at *3; T1-28-29; JE7.) Gobindram also transferred funds out of his account to pay off his wife's credit card bills, as well as to pre-pay future payments on his family's automobiles and the mortgage on the family home. (Bankr. Ct. Op. at *3; T1-46; T2-31-32; JE10.) On June 20, 2011, Berzow met with debtor and his wife to further discuss filing for bankruptcy, during which Gobindram disclosed to Berzow that he had received the tax refunds, and that he had disbursed approximately $80,000 of the funds. (Bankr. Ct. Op. at *3; T2-7, 10, 20; JE19.) Berzow testified at trial, however, that he never knew the full details or extent of Gobindram's transfers of the refund proceeds until September 7, 2011 (after the petition was filed), when Gobindram provided him and the Chapter 7 Trustee with an accounting of the transfers from his Citibank account made with the proceeds. (Bankr. Ct. Op. at *4; T1-48-49; T2-10, 13, 15; JE10, 22.)

On June 27, 2011, Gobindram and Berzow met with representatives of appellees to engage in settlement discussions regarding the state court lawsuit. (Bankr. Ct. Op. at *3; T2-7.) Shortly before the meeting, Gobindram instructed Berzow not to disclose to appellees that he had received the tax refunds; at the meeting, debtor instead told the banks that he had no assets, and that the money he could use to fund a settlement would be borrowed from relatives overseas. (Bankr. Ct. Op. at *3; T1-8; T2-7-8.) After the meeting, on June 30, 2011, debtor sent the

---

[3] Gobindram waived his attorney-client privilege with Berzow and RMF at trial, allowing all the parties' joint exhibits (including privileged emails) to be admitted into evidence. (Bankr. Ct. Op. at *2.)

[4] Gobindram also apparently received a California state tax refund of $3,947.42 on June 1, 2011, which was also not disclosed in the petition, but the parties' submissions and the June 20 Order for the most part only discuss the debtor's federal and New York state tax refunds. (Appellees' Mem. of Law, ECF No. 12, at n.3; JE7.)

[5] Debtor testified that his wife was only the "president in name for my sons," and that the entity was for the purpose of "getting our sons started in business." (Bankr. Ct. Op. at *3; T1-30.)

3

banks a financial statement in support of his assertions regarding his financial situation which also failed to disclose that he had recently received approximately $120,000 in combined tax refunds. (Bankr. Ct. Op. at *3; T1-10; T2-9; JE6.) The statement also inaccurately stated that there was only $2,800 in Gobindram and Melson's joint Citibank account; in reality, there was $22,000 in the account at the time of the meeting with the banks, and approximately $10,000 at the end of the month. (Bankr. Ct. Op. at *3; T1-35-40; JE6, 7, 8.)

Berzow and RMF proceeded to prepare debtor's Chapter 7 bankruptcy petition, including a "Statement of Financial Affairs" ("SOFA"). (Bankr. Ct. Op. at *3; T2-13.) Section 3 of the SOFA required debtor to identify all payments for any consumer goods or debts to creditors made within ninety days prior to the petition date; Gobindram's draft petition checked the box stating "none," omitting the multiple payments made to creditors with the tax refund money. (Bankr. Ct. Op. at *3; T1-42; JE11.) Similarly, the SOFA asked debtor to identify all payments made to insiders within one year of his petition, and Gobindram's draft petition again checked "none," omitting the transfers made to his wife via One Armed Bandit LLC and the payments of her credit card bills. (Bankr. Ct. Op. at *3-4; T1-42; JE11.) Gobindram was provided with a copy of the draft petition, including the SOFA, at a meeting with Berzow on August 11, 2011, and debtor requested to take a copy of the petition home for review. (Bankr. Ct. Op. at *3-4; T2-13.) RMF also emailed a copy of the draft petition to Gobindram on August 12, 2011. (Bankr. Ct. Op. at *3; T2-11; JE20.) Several days later, on August 14, 2011, Gobindram replied via e-mail to RMF, stating that he had "read everything" in the petition, and that "it looks fine." (Bankr. Ct. Op. at *3-4; T2-12; JE21.) Gobindram then signed the relevant sections of the petition, including at the bottom of the SOFA, where it stated above the signature line: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." (Bankr. Ct. Op. at *4; T1-41; JE11.) RMF submitted the signed petition on debtor's behalf on August 15, 2011. (Bankr. Ct. Op. at *2-4.)[6]

On August 18, 2011, after the petition was filed, the Chapter 7 Trustee requested that Gobindram prepare, among other things, an accounting of the transfers he made that disposed of his federal and California state tax refunds out of the Citibank account.[7] (Bankr. Ct. Op. at *3; T1-45-46; JE9, 10, 24.) Gobindram sent the accounting document to Berzow (to be shared with the Trustee) on September 7, 2011; in it, he disclosed that he made various pre-petition transfers to his wife, both directly and by paying off her credit cards, and to certain creditors (prepayments of their car loans, mortgage payments, landscaping bills, food and medical bills, and so forth). (Bankr. Ct. Op. at *3; T1-45-50; JE9, 10.)

---

[6] Berzow testified at trial that he reviewed debtor's petition, and that it was oversight and error on his part not to fix the answers in Section 3 of the SOFA regarding the transfers—even though he was only aware at that time, as discussed above, that Gobindram had transferred some portion of the tax refund proceeds from the June 20, 2011 meeting without further detail—before submitting it to the Bankruptcy Court, even though Gobindram had signed the SOFA, swearing to its accuracy. (Bankr. Ct. Op. at 5-7; T1-48-49; T2-10, 12-13, 15, 20-22.)

[7] It is unclear why the Trustee did not inquire about debtor's larger New York state refund, as opposed to his California refund, but Gobindram did not clarify the existence of the New York refund in his response to the Trustee.

4

On November 21, 2011, appellees commenced this adversary proceeding, objecting to debtor's discharge under the Bankruptcy Code due to these purported knowing and fraudulent misrepresentations in his SOFA. (*See generally* R-1.) At trial, debtor admitted that his petition was inaccurate and false—in that the SOFA omitted the transfers of the tax refund proceeds to his wife and creditors other than appellees—but claimed that the false statements were unintentional because he did not actually read the entire SOFA, instead skipping sections where the answer was "none," such as the relevant questions in Section 3. (Bankr. Ct. Op. at *4; T1-42-43, 49-50; T2-24-25, 27-28.) Gobindram claimed that he only read the answers containing (in his view) the substantive information he had provided to his attorney, such as the name and location of his businesses, and was relying on his attorneys to accurately fill out the petition and its schedules. (Bankr. Ct. Op. at *4; T1-42-43, 49-50; T2-24-25, 27-28.) During questioning by Bankruptcy Judge Grossman, Gobindram admitted that, if he had read Section 3, he would have fully understood that the questions were asking about transfers such as the ones made to his wife and the other creditors, and he would have known that the answers were inaccurate. (Bankr. Ct. Op. at *4; T2-24-28, 37.) Gobindram stated that despite the fact that he did not read numerous questions in the petition, he emailed his attorneys at RMF that he had "read everything" and verified the petition was accurate. (Bankr. Ct. Op. at *4; T2-26-27.)

B.  Bankruptcy Proceedings

On November 21, 2011, BOB and BOI commenced the adversary proceeding against Gobindram. After two days of trial on July 16, 2013 and December 3, 2013, the Bankruptcy Court issued a Memorandum Decision After Trial denying debtor's discharge on June 20, 2014. With respect to BOI/BOB's cause of action under Section 727(a)(4)(A) for knowing and fraudulent misstatements, the Bankruptcy Court held that Gobindram's omissions in his SOFA constituted knowing false statements under oath, and that his signing the petition despite his knowingly failing to read all of the questions and answers in his petition exhibited a "reckless disregard for the truth" equivalent to fraudulent intent. (Bankr. Ct. Op. at *6-7.) The Bankruptcy Court further held that Gobindram's advice of counsel defense was unavailing because any purported reliance was unreasonable, given that debtor himself admitted that, if he had read the relevant questions, he would have known that the answers were inaccurate. (*Id.* at *7-8.) As the Bankruptcy Court put it, "The Debtor admittedly did not read his SOFA before submitting it to the Court and therefore may not insulate his reckless disregard for the truth. Regardless of whether RMF mistakenly excluded the transfers, the Debtor had an independent duty to read his documents before signing them." (*Id.* at *8.) Finally, the Bankruptcy Court held that the misstatements were material because they clearly related to the disposition of potential estate property prior to bankruptcy which might have been susceptible to preference or fraudulent conveyance claims. (*Id.* at *9.) Because appellees satisfied their burden to prove the elements of Section 727(a)(4)(A), the Court denied debtor's discharge. The Bankruptcy Court therefore declined to rule on the claim under Section 727(a)(2)(A). (*Id.*)

The Bankruptcy Court entered the Judgment denying debtor's discharge on June 20, 2014.

C.  Appeal

Appellant filed a notice of appeal of the June 20 Order in the Bankruptcy Court on

5

August 20, 2014, which was docketed in this Court on September 4, 2014. Appellant filed his brief on December 1, 2014. Appellees filed their brief on December 15, 2014. Appellant filed his reply on February 5, 2015.[8] The Court has fully considered the parties' submissions.

## II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may "remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

The Court reviews the Bankruptcy Court's legal conclusions *de novo*, mixed questions of fact and law *de novo* and factual findings for clear error. *See Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003). "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 51 (2d Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Collins v. Hi-Qual Roofing & Siding Materials, Inc.*, Nos. 02-CV-0921E(F), 02-CV-0922E(F), 2003 WL 23350125, at *4 n.16 (W.D.N.Y. Dec. 18, 2003) ("'[A] finding is only clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . This standard precludes this Court from reversing the Bankruptcy Court's decision if its account of the evidence is plausible, even if this Court is convinced that it would have weighed the evidence differently." (quoting *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 484 (E.D. Pa. 1989))).

## III. DISCUSSION

### A. Denial of a Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A)

Section 727(a)(4)(A) of Title 11 of the United States Code ("Section 727") provides:

(a) The court shall grant a debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

---

[8] The Court notes that Gobindram's representation changed over the course of this appeal. Debtor was initially *pro se*, but then retained Mark J. Friedman as counsel, who had also represented debtor during the adversary proceeding in the Bankruptcy Court after the withdrawal of Berzow and RMF. Friedman submitted debtor's opening brief, but filed a motion to withdraw on December 19, 2014, shortly after appellees filed their brief, purportedly due to a "possible conflict of interest" with the malpractice claim brought by Gobindram against Berzow and RMF in state court. (*See* ECF No. 13.) Gobindram opposed Friedman's withdrawal, citing his inability to obtain new counsel, and arguing that Friedman's grounds for withdrawal were unfounded. (*See* ECF No. 18.) After a show cause hearing on January 7, 2015, attended by Friedman, Gobindram, and counsel for appellees (via telephone), the Court granted Friedman's motion to withdraw on January 9, 2015. (*See* ECF No. 19.) Gobindram represented to the Court at that time, and in subsequent submissions, that he would be proceeding for the remainder of the appeal *pro se* (*see* ECF No. 21), but at some point later retained Alan C. Stein as counsel, who filed the reply brief on debtor's behalf. Gobindram has therefore been represented by counsel at all times relevant to this appeal.

6

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). Because Section 727 "impos[es] an extreme penalty for wrongdoing, [it] must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quotations and citation omitted); *see also Berger & Assocs. Attorneys, P.C. v. Kran (In re Kran)*, 493 B.R. 398, 403 (S.D.N.Y. 2013) (accord). "The objecting creditor bears the burden to establish the requirements of § 727 by a preponderance of the evidence." *Virovlyankaya v. Virovlyanskiy (In re Virovlyanskiy)*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013); *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 59 (E.D.N.Y. 2010); *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000).

To prove an objection to discharge under Section 727(a)(4)(A), the party objecting to discharge must establish by a preponderance of the evidence that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *In re Moreo*, 437 B.R. at 59 (quotations and citation omitted); *see also Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009).

The materially false statements recognized under this subsection may have been made as part of or omitted from the bankruptcy petition, schedules, statement of affairs, or during examinations or the bankruptcy proceeding itself. *See, e.g., New World Rest. Grp., Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 132 (E.D.N.Y. 2005); *see also Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008) (same). A debtor's intent to defraud or deceive can be proven by evidence of either (1) the debtor's actual intent to deceive or (2) reckless disregard for the truth. *Adler v. Lisa Ng (In re Adler)*, 395 B.R. 827, 843 (E.D.N.Y. 2008); *see also Dranichak v. Rosetti*, 493 B.R. 370, 379 (N.D.N.Y. 2013); *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (citations omitted). Intent to defraud, however, "will not be found in cases of ignorance or carelessness." *In re Gardner*, 384 B.R. at 667.

Because "[f]raudulent intent is rarely susceptible to direct proof[,] . . . courts have developed 'badges of fraud' to establish the requisite actual intent to defraud." *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983) (internal citation omitted) (quoting *In re Freudmann*, 362 F. Supp. 429, 433 (S.D.N.Y. 1973), *aff'd* 495 F.2d 816 (2d Cir. 1974) (per curiam)). "Badges of fraud" include secreting proceedings of a transfer, transferring property to family members, the lack or inadequacy of consideration, the general chronology of the events or transactions in question, and the concealment of relevant facts. *See id.* at 1582–83 (quoting and citing cases). Further, "[w]here there has been a 'pattern' of falsity, or a 'cumulative effect' of falsehoods, a court may find that [fraudulent] intent has been established." *Monety Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (citation omitted). With respect to reckless indifference to the truth, courts in the Second Circuit have recognized that fraudulent intent may be inferred from a series of incorrect statements and decisions contained in the schedules. *See Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 571–72 (E.D.N.Y. 2000) ("[I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud." (citations

7

omitted)); *Castillo v. Casado (In re Casado)*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) (citing, *inter alia*, *Diorio v. Kreister-Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969); *In re Kaiser*, 722 F.2d at 1583 n.4)); *see also In re Smorto*, 2008 WL 699502, at *6 (citing cases). In examining whether debtors exhibited a reckless disregard or indifference to the truth, courts consider "(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." *Agai v. Antoniou (In re Antoniou)*, 515 B.R. 9, 24 (Bankr. E.D.N.Y. 2014) (internal quotation marks and citations omitted).

Once the moving party meets its initial burden to produce evidence of a false statement, "the burden of production then shifts to the debtor[] to produce a 'credible explanation' for making the 'false and fraudulent representations,'" *Cadles of Grassy Meadows II, L.L.C. v . St. Clair (In re St. Clair)*, No. 13-MC-1057 (SJF), 2014 WL 279850, at *7 (E.D.N.Y. Jan. 21, 2014) (quoting *In re Moreo*, 437 B.R. at 59), or to "prove that it was not an intentional misrepresentation," *In re Gardner*, 384 B.R. at 668 (citations omitted). "Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *In re Maletta*, 159 B.R. at 112 (quoting *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)). Furthermore, purported reliance on the advice of counsel cannot excuse a false representation in a petition when the error should be plainly obvious to the debtor. *In re Dubrowsky*, 244 B.R. at 573 ("An explanation by the debtor that he acted on advice of counsel, who in turn was fully aware of all the relevant facts, generally rebuts an inference of fraud. However, even the advice of counsel is not a defense to a charge of making a false oath or account when it is transparently plain that the property should be scheduled.") (citing *In re Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974); *In re Kelly*, 135 B.R. at 462 ("The defense of reliance on counsel is not available when it is transparently plain that the advice is improper.")).

B. Application

Gobindram appeals the Bankruptcy Court's denial of his discharge on two grounds.[9] First, appellant contends that the

---

[9] In his opening brief, Gobindram also challenged the Bankruptcy Court's finding that the misstatements in his petition were material, because appellant disclosed the details of the transfers prior to the Section 341 Meeting of the Creditors in the accounting provided to the Trustee. (*See* Appellant's Brief, ECF No. 10, at 14-15.) However, as appellees noted in their brief, appellant never raised this argument at trial or in his post-trial memorandum, and therefore should not be allowed to argue this issue on appeal unless he makes a showing as to why it was not previously raised and that not allowing the argument would present a "manifest injustice." (*See* Appellees' Brief, ECF No. 12, at 17 (citing *In re Johns-Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014).) Appellees further argued that, even if the issue were to be considered, the omissions were clearly material because, as the Bankruptcy Court noted in the June 20 Order, "any matter bearing on the discovery of estate property or the disposition of the debtor's property is material for purposes of § 727(a)(4)(A)" (Bankr. Ct. Op. at *9), and the omissions related to the disposition of approximately $120,000 of estate property. (*See* Appellees' Brief, ECF No. 12, at 17-18.) Appellant responded in his reply brief that he believed that the issue had been raised at trial "through the facts evidence [sic] and testimony," and that the manifest

Bankruptcy Court's finding that he acted with reckless indifference to the truth was clearly erroneous.[10] Second, appellant argues that the Bankruptcy Court improperly held that his reliance on counsel was unreasonable, and that his reliance did in fact negate any inference of fraud due to reckless indifference. The Court will address each argument in turn, and, for the reasons discussed below, affirms the Bankruptcy Court's June 20 Order.

1. Fraudulent Intent

Based on the record developed before and during the trial, the Bankruptcy Court correctly determined that the appellees established a *prima facie* case that Gobindram exhibited a reckless indifference to the truth, such that the fraudulent intent requirement of Section 727(a)(4)(A) is satisfied. The record, as set out in further detail above, is clear as to these key points: Gobindram was advised by his attorney that the proceeds from any tax refunds would be estate property if he declared bankruptcy, and payments of those proceeds could be recoverable as preferences; immediately upon receiving the tax refund money, Gobindram transferred the proceeds to his wife and to creditors other than appellees, including prepayment of his house and car payments; Gobindram instructed his lawyer not to disclose the existence of the tax refund to appellees during settlement negotiations in the state court lawsuit, and did not provide his attorneys with the details of these transfers when they were preparing his bankruptcy petition; despite admittedly having ample opportunity to review the petition before filing, Gobindram failed to read the section of the SOFA in which these transfers were required to be disclosed, but nonetheless informed his attorneys that he had read the petition in full and it "looked fine"; Gobindram then signed the petition, falsely swearing in so doing that he had read the petition and that the answers were true and correct; and Gobindram only disclosed the details of the transfers after the Chapter 7 Trustee had examined the petition, noticed inconsistencies, and demanded information regarding the disposition of the tax refunds' proceeds. The Bankruptcy Court also concluded that Gobindram's extensive business experience in owning and operating

---

injustice was due to the fact that "as a result of the attorney's gross negligence, recklessness, and constructive disappearance along with a failure to give any warning, the Appellant had no other opportunity to be honest simply because he did not know how a bankruptcy works," and because the transfers omitted were small compared to the overall debt involved. (Appellant's Reply, ECF No. 25, at 13.) Though appellant's arguments are either circular or somewhat nonsensical, even accepting *arguendo* that the Court should hear the materiality argument, it is patently obvious that the omitted information was material under Section 727(a)(4)(A) for the reasons stated by the Bankruptcy Court. The only case appellant cited for the proposition that his post-petition disclosures eliminated any materiality of the omissions, *In re Moreo*, 437 B.R. at 65 (*see* Appellant's Brief, ECF No. 10, at 15), in fact stands for the opposite—the court there found that the omissions by the debtor in that case were material because they were not reported on the petition's schedules or SOFA. *In re Moreo*, 437 B.R. at 65 ("The debtors were required to list [the estate property] on their schedules and statement of financial affairs. . . . The Court further notes that debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate.") That case does not support appellant's proposition that post-petition disclosures somehow vitiate materiality. Therefore, the Court holds that the omissions in Gobindram's petition were material under Section 727(a)(4)(A).

[10] Gobindram concedes that "the evidence presented at trial was sufficient to satisfy" the first three Section 727(a)(4)(A) elements that (1) the debtor made a statement under oath; (2) the statement was false; and (3) the debtor knew that the statement was false. (Appellant's Brief, ECF No. 10, at 10.)

9

his companies for many years (including negotiating and signing complex documents) evidenced his financial sophistication.[11] (Bankr. Ct. Op. at *7.) The Bankruptcy Court found that these circumstances, especially appellant's false oath in signing the petition without reading it, constituted reckless indifference to the truth, citing (in particular) *Bohm v. Dolata (In re Dolata)*, 306 B.R. 97, 149-150 (Bankr. W.D. Pa. 2004), which held that "if a debtor fails to read his or her bankruptcy schedules or Statement of Financial Affairs but nevertheless signs the declaration that is included at the end of such documents to the effect that he or she has read such document, then such debtor has, at a minimum, fraudulently uttered a false oath for purposes of § 727(a)(4)(A) in the form of such declaration." (*Id.* at 6-7.)

This Court agrees, and finds that the Bankruptcy Court's conclusion regarding Gobindram's reckless indifference was not clearly erroneous. With respect to the factors relevant to reckless indifference as laid out in *In re Antoniou*, the record in this case is clear that appellant, who possessed a degree of financial sophistication, entirely failed to pay the necessary attention to detail and accuracy in providing key information to the Bankruptcy Court in his petition. Gobindram openly admitted at trial that he consciously skipped full sections of the SOFA because he did not think questions where "none" was the answer required his attention. The Court cannot fathom the logic of this thought process—appellant at trial evinced his understanding that it was important to verify the accuracy of the responses to questions where his attorneys had entered substantive responses, but could not explain why he did not think it equally important to read the other questions to ensure information had not been omitted.[12] In any event, this Court agrees with the many courts around the country who have held that the false oath sworn when a debtor signs a bankruptcy petition without reading it fully constitutes a reckless indifference to the truth under Section 727(a)(4)(A). *See In re Dolata*, 306 B.R. at 150 (by not reading his petition to ensure the accuracy of all the information therein, "the debtor exhibits a reckless indifference to the truth, which recklessness, as set forth above, is the equivalent of fraud"); *see also Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111-12 (1st Cir. 1987) (finding that debtor's false oath— in signing his petition when it contained omissions caused by an "oversight" in completing and reviewing the schedules— constituted reckless disregard, because "[s]worn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming."); *Ross v. Wolpe (In re Wolpe)*, No. 09-13469, 2013 WL 1700930, at *10 (Bankr. N.D.N.Y. Apr. 18, 2013) ("If a debtor fails to read the

---

[11] Appellant argued in his reply that the Bankruptcy Court erroneously concluded that he was a sophisticated businessman, because there was no testimony elicited as to "his experience in reviewing agreements." (Appellant's Reply, ECF No. 25, at 10.) Appellant cites no support for why this very specific testimony would be required to find that a debtor exhibited "financial sophistication as evidenced by his or her professional background" under the reckless indifference factors. *In re Antoniou*, 515 B.R. at 24. Moreover, not only did Gobindram testify in detail as to agreements he had negotiated and entered into as president of his companies (T1-22-24), he testified as to other sophisticated aspects of his decades-long involvement in his electronics companies' operations. Therefore, the Bankruptcy Court's finding that appellant possessed a significant degree of financial sophistication was not clearly erroneous.

[12] Additionally, not only is there no evidence in the record that appellant ever disclosed the full details of transfers to his attorneys (or anyone else) prior to filing his petition, appellant actually instructed his attorneys not to disclose the existence of the tax refunds themselves from appellees' counsel when they were negotiating a settlement in the state court case. Only after the Trustee raised the issue of the transfers of the tax refund proceeds post-petition did appellant actually disclose the details of the transfers.

10

petition or accompanying documents but nevertheless signs the declaration therein that she has done so, then such debtor has, at a minimum, fraudulently uttered a false oath for purposes of § 727(a)(4)(A). A debtor has a paramount duty to carefully consider the questions posed on the petition, schedules, and statements and to verify that all information is correct.") (citations omitted); *United States Trustee v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005) ("Debtors have a duty to carefully review the information included in their schedules and statements and insure that the information is accurate and complete."); *Mosley v. Sims (In re Sims)*, 148 B.R. 553, 557 (Bankr. E.D. Ark. 1992) (a debtor's "glancing over" his bankruptcy petition's description of his assets and transfers "constitutes a cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor").

Appellant concedes that "the case law is clear" that a debtor's false oath in signing his petition without reading it fully constitutes reckless indifference.[13] (*See* Appellant's Reply, ECF No. 25, at 9.) Appellant, however, argues that his situation is somehow distinguishable because he only made one false oath to the Court and his petition only contained two questions where information was omitted, unlike the debtors in the cases cited by the Bankruptcy Court where debtors made numerous omissions in their petition or signed amended petitions without reading them as well as the original petition. (Appellant's Brief, ECF No. 10, at 13.) The Court disagrees—although it is true that some of the cases cited herein or by the Bankruptcy Court involve debtors who made multiple misrepresentations in their bankruptcy petitions, the fact that Gobindram only swore to the accuracy of one petition containing omissions from responses in only one section of the SOFA does not affect the calculus in this case. Under these circumstances, where Gobindram openly admitted without any adequate explanation that he failed to read his petition fully, he violated his "paramount duty" in submitting his bankruptcy petition to ensure that every question was answered fully and accurately. *In re Wolpe*, 2013 WL 1700930, at *10.

Appellant relatedly argues that, because he provided the Trustee with an accurate accounting of the transfers of the tax refund proceeds prior to the Section 341 Meeting of the Creditors and then testified as to the transfers at trial, he merely made an honest mistake unworthy of a denial of discharge. (*See* Appellant's Brief, ECF No. 10, at 14; Appellant's Reply, ECF No. 25, at 7, 11.) Appellant's post-petition admissions, however, did not come of his own volition

---

[13] Appellant originally argued, before this concession in his reply, that *Dranichak*, 493 B.R. at 383, stood for the proposition that "a failure to comprehensively review a bankruptcy petition, in and of itself" does not necessarily require a denial of discharge, and therefore the Bankruptcy Court was clearly erroneous in finding that he demonstrated a reckless disregard for the truth. (Appellant's Brief, ECF No. 10, at 11.) Appellant wisely abandoned this argument in his reply; although the *Dranichak* court noted that its review of case law suggested that the failure to review a petition does not *per se* demand a denial of discharge, it went on to state that courts in such cases "analyze facts such as (1) whether the debtor had knowledge of the contents of the petition independent of his or her review of the petition, (2) the magnitude of the misstatement in or omission from the petition, and (3) the connection between the misstatement or omission and the debtor's failure to review the petition." 493 B.R. at 383. In that case, there was no evidence that the debtor failed to review the pages of his petition containing the errors. *Id.* Here, there is no such uncertainty: Gobindram admitted at trial that he skipped the questions containing the material omissions, and he would have noticed the errors had he read them because he was aware that the transfers were potentially recoverable. The Court, therefore, finds it clear, even under *Dranichak*'s methodology, that Gobindram's failure to review constituted reckless indifference in this case.

11

after independently realizing that he had made serious omissions from his petition; instead, Gobindram only provided the accounting after the Chapter 7 Trustee had reviewed the petition, noticed inconsistencies in the SOFA regarding the tax refunds, and sent the letter demanding further information regarding appellant's petition to Berzow and RMF. Under such circumstances, the effect of appellant's post-petition admissions is negligible, and does not negate debtor's reckless indifference. *See Rosenbaum v. Kilson (Matter of Kilson)*, 83 B.R. 198, 203 (Bankr. D. Conn. 1988) ("The inference of innocent intent is slight where the debtor has changed his testimony or amended his schedules after the trustee or creditors have already discovered what the debtor sought to hide, or when the change in testimony or amended schedules are precipitated by the trustee's persistence in uncovering the truth."); *Kartzman v. Kleinman (In re Kleinman)*, No. 05-55211 (NLW), 2011 WL 5528250, at *6 (Bankr. D.N.J. Nov. 4, 2011) ("The fact that the Debtor ultimately disclosed these matters to the Trustee does not provide an adequate defense. . . . [I]f merely amending his schedules or subsequently providing documents were enough there would be little meaning or purpose to § 727(a).") (citations omitted); *cf. In re Tully*, 818 F. 2d at 111 ("The fact that the debtor came to the creditors' committee session chock-a-block with records of then-undetermined significance does not suffice to save the day. A petitioner cannot omit items from his schedules, [and] force the trustee and the creditors, at their peril, to guess that he has done so. . . ."). In this case, appellant's post-petition disclosures do not explain appellant's false oath in his petition and establish innocent intent, such that the Bankruptcy Court's finding of reckless indifference was clearly erroneous.

For these reasons, the Court holds that the Bankruptcy Court's finding that Gobindram showed a reckless disregard for the truth was not clearly erroneous.

2. Advice of Counsel

Appellant argues, in the alternative, that his reliance on Berzow to accurately prepare his petition—which Berzow admits he failed to do—provides a credible explanation for the false oath and misstatements in the petition. The Bankruptcy Court rejected this argument, finding that appellant's reliance was unreasonable, and therefore could not refute appellees' *prima facie* showing under Section 727(a)(4)(A). This Court considers this legal conclusion under a *de novo* standard, and holds that the Bankruptcy Court did not err in rejecting Gobindram's advice of counsel defense.

Gobindram's argument in support of his appeal on this issue hinges on Berzow's testimony that, in reviewing the draft petition prepared by an RMF associate, he made a mistake in failing to notice that Section 3 omitted any information as to any transfers made by debtor of his tax refund proceeds. Gobindram argues that Berzow's admission of error insulates him from appellees' Section 727(a)(4)(A) claim.

It is well-established that a debtor's purported reliance on the advice of counsel is unreasonable when the erroneous advice should be "transparently plain" to the debtor. *In re Dubrowsky*, 244 B.R. at 573; *In re Mascolo*, 505 F.2d at 277 n.4; *see also Cadles of Grassy Meadows II, L.L.C. v. St. Clair (In re St. Clair)*, 533 B.R. 31, 42 (Bankr. E.D.N.Y. 2015) (holding that "the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel. Indeed advice of counsel is not an impenetrable shield behind which [a debtor] may continually hide.") (internal quotation marks and citations omitted); *In re Kelly*, 135 B.R. at 462 ("The defense of reliance on

counsel is not available when it is transparently plain that the advice is improper."); *In re Tully*, 818 F.2d at 111 ("[A]n attorney's willingness to bear the burden of reproach [cannot] provide blanket immunity to a debtor; it is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules."). This defense, therefore, does not apply in situations where a debtor fails to review the petition and supporting schedules prepared by his attorney—as discussed above, it is the debtor's obvious duty to read the entire petition (no matter who prepared it) before signing and swearing to its accuracy. For example, in *Sullivan v. Bieniek (In re Bieniek)*, 417 B.R. 133, 137 (Bankr. D. Minn. 2009), the court found that, even assuming the omissions in the petition were caused by debtors' counsel, the debtors subsequently had ample opportunity to read and review the petition for accuracy but apparently failed to do so, undermining any claim of reliance on advice of counsel.

Gobindram's failure to read the petition prepared by his attorney—equivalent to "burying his head in the sand and then disclaim[ing] all responsibility for statements which he made under oath," *Darwin (Huck) Spaulding Living Trust v. Carl (In re Carl)*, 517 B.R. 53, 70 (Bankr. N.D.N.Y. 2014)—therefore caused him to miss the transparently plain omissions in his petition. It is well-established that questions requiring basic factual responses, such as those in Section 3 of the SOFA, are "transparently plain." *See, e.g., In re Wolpe*, 2013 WL 1700930, at *11 ("[T]he information sought from the Debtors was straightforward and required no legal interpretation for an individual to comprehend. It is 'transparently plain' that correct income, expenses, and transactional information should have been provided regardless of the advice of counsel.") (citations omitted). The Court, however, does not need to make any analytical leaps in arriving at this conclusion; Gobindram himself openly admitted at trial that, if he had actually read the questions before signing and filing his petition, he would have fully understood the questions and known that the transfers he made to his wife (for example) should have been included:

> THE COURT: Read [the questions in Section 3] now and tell me whether had you read them you still would have found them to be accurate or would you have found them to be accurate?
>
> A: If I would have, you know, been, been more attentive, and if I would have read it then I would have certainly brought to Mr. Berzow the question that I had, I mean Mr. Berzow —
>
> THE COURT: What would the question have been?
>
> A: My question would have been, you know, why are these marked, checked off, okay, because we have, I have transferred money to my —
>
> THE COURT: Sir, you knew when you signed this, whether you read it or not, you knew that you had made transfers to your wife.
>
> A: That's correct, sir.
>
> THE COURT: And so that's not an issue, you did make the transfers, you knew you did —
>
> A: Yeah.

13

THE COURT: And your argument is that you just didn't read it?

A: That is correct. That is absolutely correct.

...

THE COURT: The information that I asked you about that you said had you read it you would have changed it, and you knew it was wrong, why did you need anybody to tell you it was wrong?

A: Your Honor, unfortunately it's been my bad habit, okay, that, you know, when I look at a, at a form, you know, if there are, if there are questions, for example, if there is like text which I don't have to respond to, unfortunately, not even just in this instance, I, maybe it's a flaw, you know, I, I just like to address things that I have to address. Okay, I don't, this was my fault that I didn't read it completely.

THE COURT: But had you read it, you would have known it was wrong, you didn't need anybody to tell you it was wrong?

A: No, I would have known it's wrong and I would have, being the attorney, okay, that he is, I can't just correct it myself, I would have gone to the attorney and said, you know, this information is wrong, okay, maybe somebody did a mistake here. I would have done that.

THE COURT: I accept that, but your point is that you didn't need anybody to tell you it was wrong, the only reason it's there is you didn't read it?

A: That, that is true, Your Honor, but I wouldn't have changed it myself, I would have told my attorney that it was wrong and let them correct it.

(T2-27-28, 37.)

Therefore, even though Berzow and RMF may have erred in drafting the petition, Gobindram's own testimony demonstrates that because he did not fully read the petition they prepared, he failed to notice the transparently plain omissions therein and, thus, did not have his attorneys correct them.

In his reply, appellant contradictorily argues that the Bankruptcy Court incorrectly ruled that he had "an independent duty to read his documents before signing them" because "[t]he client needs a warning" from his *attorney* that a failure to read all aspects of his petition to ensure that the responses are fully accurate. (Appellant's Reply, ECF No. 25, at 11-12.) Beginning with the preface that that "there is no legal basis . . . to date" for this argument, appellant in his reply contends at length that the Court should find that Gobindram was an "honest and ignorant debtor" victimized by his attorney, who purportedly did not warn his client that "each and every question must be reviewed carefully and that their whole case hinged on their honest and full answers to each and every question on the Petition and SOFA." (*Id.* at 6.) Appellant further asserts that the Court should *sua sponte* rule that attorneys assisting debtors with bankruptcy petitions in the future must provide them with a specific warning as to their duty to read their petition before filing, that attorneys who fail to do so will be sanctioned, and that clients who do not receive this warning will have an

14

opportunity to offer "full disclosure" post-petition without penalty (and that disclosures at the Section 341 meeting shall be deemed an amendment to the petition). (*Id.* at 6-12.)

This argument (and invitation to rewrite the Bankruptcy Code) is entirely specious. As discussed extensively above, and as conceded by appellant in the same brief, it is well-established it is the independent duty of all debtors—whether they are advised by counsel or not—to ensure that the information in their petition is accurate. Failing to do so before signing the petition under most circumstances constitutes reckless indifference. Aside from the case law, the Chapter 7 petition itself—which Gobindram admitted that he received from his attorneys in person and via email, had opportunity to review, and signed—plainly warns immediately above the line on which appellant signed the SOFA: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." This warning could not be clearer, and no supplemental admonition from an attorney is required under the law to adequately apprise a debtor of his duty to read his petition fully for its truth and accuracy. Indeed, Gobindram at trial openly admitted that "this was my fault that I didn't read it completely." (T2-37.)

Under the circumstances of this case, appellant cannot plausibly argue that he reasonably relied on the advice of counsel. For these reasons, under *de novo* review the Court holds that the Bankruptcy Court did not err in rejecting Gobindram's reliance on advice of counsel defense.[14]

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the order and judgment of the Bankruptcy Court in its entirety. The Clerk of the Court shall close the case.

SO ORDERED.

s/ Joseph Bianco
JOSEPH F. BIANCO
United States District Judge

Dated: August 25, 2015
Central Islip, New York

\*\*\*

Appellant is represented by Alan C. Stein of Alan C. Stein, P.C., 479 South Oyster Bay Road, Plainview, NY 11803. Appellees are represented by Joseph E. Czerniawski of Wormser Kiely Galef & Jacobs LLP, 825 Third Avenue, New York, NY 10022.

---

[14] The Court does not excuse any errors by Berzow or RMF in preparing the petition; rather, the Court finds only that the law is clear that any alleged errors do not negate Gobindram's reckless indifference.